We are now ready for 17-8078, Caldwell v. UNUM. Good morning. I am Richard Minster representing the appellants Rick and Sonia Caldwell. There are two primary questions here if we distill everything down. The first is whether Congress intended to abolish common law protections for insureds when it enacted ERISA. If you extend that, you could also say that the U.S. Supreme Court intended to abolish those same restrictions when it incorporated a deferential standard of review into ERISA cases. Second, even if deference stands, then the question is whether UNUM abused its discretion by not employing a principled and reasoned deliberative process when it denied the Caldwell's claim. The first question seems easy, and the answer is of course not. There is nothing in the text of ERISA that suggests or even hints that the common law protections that existed prior to its enactment are now abolished. All of that set of rules that have been around for decades to protect insureds when it came to insurance policies. And similarly for the U.S. Supreme Court, they have never held that deference means that you ignore all of these time-tested rules of insurance policy interpretation and drafting. In fact, when you look at what they have said, they have specifically counseled against that kind of a result. The Firestone Court stated any policy or standard that affords less protection to employees and their beneficiaries than they enjoyed before ERISA can't stand. The Glenn Court reaffirmed that. Let me ask you, are you suggesting we overrule any 10th Circuit precedents? No. I think, in fact, you follow 10th Circuit precedent from Miller that I'll get to in just a minute. So what's our standard of review that we're supposed to apply here under 10th Circuit precedent that we're bound by? Well, as far as the decision itself, I think you still have abusive discretion in terms of what this Court has said previously. However, when you look at the Miller case and you look at what the U.S. Supreme Court case had said, I think those cases were wrongly decided. Okay. Well, that's why I asked, because we're not going to overturn anything by the Supreme Court. And I'm not asking you to. And this panel can't overturn anything by the 10th Circuit. Maybe you can seek en banc review. But for you to say that precedent that binds us is wrongly decided doesn't get you very far before a panel. That's why I was asking what we're bound by here. Well, I think you've got two different sets of precedent from the 10th Circuit. I think you've got one that will tell you, yes, you do not employ deference in this specific case. I think you've got some other cases that say, yes, you do. So that was the point. Well, the ones that say, yes, we do, are those ERISA cases? They're both ERISA cases. Both ERISA cases. They're both ERISA. So you're saying we have inconsistent precedent? That's what I'm saying. Are you talking about Kimber and Miller? Kimber and Miller, yes. And Kimber came first. It's 99, and Miller is 2007. Don't we default to the earlier authority? I don't think you do, because for one thing, I don't think Kimber dealt with an insurance policy, and Miller did. So I think Kimber is distinguishable in that regard. But to get back to the U.S. Supreme Court, I talked about what Firestone said, and Glenn also reaffirmed that while ERISA serves many purposes and many goals, they're all outweighed by the intent of Congress to provide enhanced protections for employee benefits. And the Supreme Court has recognized on numerous occasions that while trust law is a starting point for developing the federal common law in ERISA, we need not follow trust principles where trust law is inconsistent with the language of the statute, its structure, or its principles. Abolishing the time-tested rules of interpreting insurance policies, and also that have to do with drafting standards, and they dovetail because the rules enforce the drafting standards, abolishing them in the name of deference definitely fits that bill of prohibited policies. It doesn't mean deference can't be used. It doesn't mean deference doesn't have a role in ERISA cases. But when you specifically talk about interpreting insurance policies, then they need to go. And this court unequivocally agreed in Miller where it said that strictly construing ambiguities against the drafter comports with our precedent. Our court has never construed the ambiguities of an ERISA plan against the beneficiary, and doing so would undermine the policies of ERISA, which Congress enacted to provide employees with protections for their contractually defined benefits. The court in Miller also noted that it's not too much to ask to employ these rules because of all the other benefits, such as exemption from state law that ensures getting ERISA. And specifically, the court said, the Miller court, failure to employ contra pro forentum would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted, a result that would be at odds with the congressional purposes. So you look at what this court said in Miller. You look at what the Supreme Court said in Firestone and in Glenn, and that's the exact situation that you have here. And if this is true, that an unbiased court who owes duties to no one, certainly to no litigants other than to correctly decide cases, undermines ERISA by not following these rules of insurance policy interpretation, then it has to follow. It certainly follows that a conflicted insurance company employee who owes a duty only to the beneficiaries and the employees, equally if not more so undermines ERISA when they fail to employ those same standards. Can I stop you there and just back up to make sure I understand the argument? Kimber and Miller are both disability cases. And what I understood Miller to say, and I think I'm in the same place where you are, which is Headnotes 13 and 14 about the rule constraining ambiguities against the drafter, the court distinguishes between two things. First of all, are we under the abuse of discretion? Was discretion given to the administrator? And then that instance cites to Kimber as though that's still good law, that you don't do that. Then if it's de novo, which is to say that the discretion has not been given to the administrator, then we would apply the rule against the drafter. And this is certainly the former case, so why would Kimber not control? Well, ultimately the question is, can deference swallow the time-tested rules of insurance policy interpretation? When this court acknowledged that doing so undermines the purpose of ERISA. I mean, if it undermines the purpose of ERISA, it undermines the purpose of ERISA. Period. End of story. So how can that happen just because of deference? And the answer is it can't, unless deference trumps the act and what the Supreme Court said in both Glenn and Firestone. And that's my point. The Supreme Court, while it has talked about deference, has never said that deference swallows these things. And the court's already acknowledged that if you ignore them, you're undermining ERISA. So that's my whole point, is if you undermine it, then how does an insurance company employee who has a conflict of interest and knows a fiduciary duty to beneficiaries that this court doesn't, you get to the same place. How is it not the same thing? That's the point. And if you look at Miller, and in Miller they quoted the Ninth Circuit and talked about, and it's in the same place at page 1254, they quote the Ninth Circuit about the reasons for these insurance policy rules. And when you look at those, those are virtually identical to the congressional intent behind ERISA to begin with, which is to protect insurers and their contractually defined rights, whether it's an ERISA plan, whether it's an insurance policy. It's also to encourage employers to provide benefits to employees. Exactly. And that's why they wanted to eliminate a lot of litigation on things and allow employers to do things that might not give as great a benefit as some employees would like, but give benefits that employers feel they can afford. It's a balancing act. And the Glenn court specifically addressed that and said efficiency, encouraging employers to offer all of those. The congressional intent to provide protection for the employees outweighs all of those others combined. Who said that? Glenn, the Glenn court. And the way, I mean, when you look at what Unum said in its brief, that ERISA doesn't require them to draft unambiguous policies. It shows you where we've got to in ERISA. That Unum considers it a godsend, almost like they've been unchained from the bounds of all these pesky insurance laws that existed for 100 years prior to ERISA. And as a result, the claims process was decidedly not the result of a principled and reasoned deliberative process. And it's largely because Unum believes that it can do any of this post-claim underwriting, come in at the end, offer something, something about a definition, and that it'll be rubber-stamped by a court because of deference. In this case, similar to what happened in Glenn, if you look at the Sixth Circuit, in Glenn they talked about cherry-picking facts to support a denial and outright ignoring others. Look at the claims file here. Look at Mr. Kelly's letter to them where he listed a whole long line of cases and said, here, I'm going to summarize them, but read them all. I ask you to read them all, and they promised we'll give you full and fair consideration. Didn't read one of them. Well, who didn't read them? The claims administrator, the person who has the discretion to make the... Did anyone? I don't know that anyone read all of them. I don't even think the DLR did. The lawyers read them, and shouldn't the... and give a legal opinion? It's not unreasonable to ask for it, but the legal opinion, at least for someone who writes coverage opinions for insurance companies, needs to discuss both sides of it. There was no guidance provided to the person making the decision on how to interpret these cases. There's no discussion about what this court and the Supreme Court says is still the standard, which is you need to interpret this from the standpoint of the reasonable insured. And so what happened was... Well, had UNA made a good faith attempt to adjudicate this claim, it could and should have found in favor of the Caldwells. Much like the Texas case, which the same examiner granted benefits, despite the fact that the insured turned in front of a truck, failed to yield, which was a violation of law, she paid the claim, and then she got downgraded for it. She got criticized for it, and two months later when she decided this claim, she wasn't going to make the same mistake again. The bottom line is that when a potential insured reads the crime exclusion, he has no problem accepting that losses sustained in the commission of a crime are properly excluded. The Caldwells accept that. But the fact is, pursuant to all of the case law, speeding and nothing more is not a crime. And supposedly, at least, that standard, that you look at it from the standpoint of the reasonable insured, is still supposed to apply. Under the old rules, UNAM couldn't get away with this lack of clarity. You see it in Miller, you see it in the Lassmer case. The courts would uniformly reject this post-claims underwriting and say if you meant to say negligence, say it. If you meant to say any violation of law, say it. The bottom line is that in the name of deference, employees and beneficiaries are left with less definite policies and less protections than they were before ERISA. And according to the Wyoming Supreme Court, when that happens as a result of a policy, it cannot stand. I'll reserve the rest of my time for rebuttal. Thank you, Counsel. Good morning, Your Honors. Bernd Decker for UNAM. Your Honors, all of these accidental death cases are tragic, and this is no exception. This, however, was a very straightforward and clear application of unambiguous policy language to a set of facts by UNAM that would withstand any standard of review. And I want to talk about that in a moment, but before I do that, I really need to correct this fundamental misunderstanding of ERISA and what it protects and what it does that you just heard. ERISA was enacted to bring uniformity to law that governs employee benefit plans, many of which, including this one, have beneficiaries and participants that are in different states. And so the way that Congress sought to bring about this uniformity was to allow the plan sponsor to have primary authority over what kind of plan, if any, it was going to adopt. It doesn't have to adopt any plan. It can adopt a narrow plan, a broad plan. It's up to the employer, the plan sponsor. And the fundamental, fundamental principle of ERISA is that the plan must be enforced as written. ERISA does not confer substantive benefits. The only benefits it confers are those promised by the plan. And thus you have to enforce the terms of the plan as written, and you can't ignore any of those terms, such as a deferential grant. And a deferential grant, like any other provision in the plan, must be enforced as written. Because, again, the circular argument about what ERISA protects, ERISA protects the benefits provided by the plan. If a plan sponsor decides not to delegate discretionary authority to an administrator, then the plan sponsor has made the choice to let the courts decide in the first instance what those benefits are. If, by contrast, the plan sponsor decides to confer discretion on an administrator to determine and interpret the terms of the plans, the benefits that the employees get are those as determined by the claims administrator subject to review under trust law for reasonableness in court. Those are the benefits that ERISA confers. No substantive rights. So it all comes back to the primacy of the plan, the plan being at the center of ERISA. The trio of cases that applies that standard is Firestone, Glenn, and Concrite, all of which say trust law deferential standard applies in all cases where deference is applied pursuant to a discretionary grant. The Glenn case, the plaintiff argued, don't apply trust deference because there's a conflict. The court specifically rejected that and said, no, trust law requires a deferential standard when there is a discretionary grant. Concrite, a case that dealt with plan interpretation, where the plaintiff was saying, don't apply trust law deference. The court said, in what language could not be clearer, there are no ad hoc exceptions to deferential review. Why? Because it promotes the fundamental underlying interest of ERISA. The plaintiff says you don't have to follow trust law if it's inconsistent with ERISA's purposes. Concrite says it's not only consistent with ERISA's purposes, it's critical to ensuring predictability, uniformity, consistency, and efficiency, which is what Congress was trying to get to. Concrite, I don't think it could possibly be any clearer when it says there are no ad hoc exceptions. And this court has followed that, those instructions, on numerous occasions with respect to all different types of plans. The type of plan doesn't matter. Again, it goes back to Kimber. When a plan administrator has discretion to interpret the plan and a standard review is arbitrary and capricious, the doctrine of contra preferentum is inapplicable. It can't be any more clear. Kimber says if you adopt contra preferentum or the reasonable expectations doctrine, you're going to obliterate the discretionary review required by Firestone. That's what Kimber says. Miller, another very important case, because plaintiff relies on it, Miller is a de novo case. What does Miller say about deferential review when there's a discretionary grant? When an ERISA provider retains authority to interpret ambiguous provisions, we employ a deferential standard. We have rejected contra preferentum where the plan administrator reserves discretion. I don't know if that could be more clear. Miller is an insurance case. Other insurance cases the Tenth Circuit has decided. Cardoza, insurance case. When the administrator has discretion, review is limited to determining whether the interpretation was reasonable and made in good faith. Adamson, insurance case. The argument for contra preferentum appears to be foreclosed by Kimber. Leffler, insurance case. This one's unpublished, but my understanding of an unpublished decision is one that applies, you know, stated law in the Tenth Circuit. Contra preferentum is plainly inopposite when a reviewing court is determining the reasonableness of the construction of the contract by one of the parties to it instead of construing the language of the contract itself. There's a string of cases, no question. Yeah. But can you speak to when you do have a conflict, as there is a conflict here between the payer and the administrator, being the same person but rival interests as far as paying, the court says that's a factor for us to consider as far as arbitrary and capriciousness. Yes. What about that? Glenn sets forth that standard in very clear terms. What Glenn says, and Glenn abrogated prior law that provided special rules like burden shifting and sliding scales to determine how you factor in a factor. What Glenn says is it's a factor, and its importance depends on whether there's any evidence that the conflict influenced the decision. Does the factor go to how, in other words, when we have this factor and there is a conflict, does that reach how much deference we give to interpretation of policy terms? I don't think so, Your Honor. I think, well, first of all, Glenn. Is it unclear? You say you don't think so. Well, what confused me, Your Honor, not confused me, but the notion of reducing deference is something that Glenn expressly rejected because, again, a sliding scale before Glenn was the existence of a structural conflict in and of itself allows you to slide the deference back. Glenn rejected that, and it said it's a factor, and its importance depends on the circumstances. I would say it's going to be an unusual case where conflict is important in the pure essence of interpreting terms, whether they're reasonable or not. The only place I could see it coming in is to the extent that the Glenn Court meant that reasonableness is a spectrum, and if the decision just barely meets that reasonableness standard and there's evidence that the conflict influenced the decision, then maybe it's a tiebreaker in that instance. That's the only place I could ever see that coming in. And that's the policy manual here in the policy, right? No. So the policy manual says, the policy manual gets to the point that I'd, again, like to make here, which is that there are certain, the language of the provision applies to, it's a two-part test. It applies to crimes or attempt to commit a crime, so that is a broad spectrum of conduct that might be applicable, but it's a two-part test. There's a causation requirement. So the causation piece really informs and narrows and restricts the first part of the test, and it tells you how serious the crime has to be for the exclusion to apply, and what it says is it has to be serious enough to cause the death, and that's what the provision says, and that's what the claims manual gets to as well. There are certain violations, traffic violations, that are just inherently, or even as a case-specific matter, not serious enough to cause a death, and a great example of that is what the district court in Kansas did in the Reiling versus Sun Life case. In that case, you had an insured who was driving on a suspended license and got into an accident through no fault of her own, and what the court did there was, I think, very correctly applied this court's guidance from Fott, which says causation has to have, causation really is the touchstone to applying these exclusions, and Fott said causation has to be something more than but-for. The driving on a suspended license piece just got the person out into the road, but that wasn't the cause of the accident, and therefore, that's the type of traffic violation that this is just not going to apply to, and that's how Unum interpreted it as well, and it's manual that it provides broad guidance to the claims handlers and makes clear, but listen, every case is unique. They all turn on their factual basis, and what you should do in every case when there's a question is consult a DLR, consult a lawyer, and that's what both Ms. McKenzie and Ms. Legendre did in this case. That's an interesting way to interpret the claims manual, but that's not, it doesn't go into that sort of discussion. Well, and again. It says crime should be distinguished from traffic violations. That says typically, typically, you know, and again, I think if you're writing guidance, and there's no requirement that your guidance, you know, ERISA doesn't dictate how your guidance should be, how clear it should be. I think if you're writing guidance for lay people who are making these decisions, maybe you're not going to go into all those details about how the causation piece fits into it, but that's what it means. I mean, it means... What it seems to say is some things just aren't considered crimes. That's the step before you get to causation. So it seems to be saying traffic violations, even if they, typical traffic violations, even if they cause the death, are not uninsured. I don't think that's what it says at all, Your Honor. I mean, it goes out of its way to say that every case is unique. Well, but you're relying on general language, and Judge Hartz is pointing directly to the language of the policy manual, and that's what it says. It says that losses, was intended to exclude losses which result from an activity that would typically be classified as a crime under state or federal law, and then says that those activities would generally not be traffic violations. Then it even goes one further step and says except for DUIs. Right. And so that would make me think that unless you have a DUI and you just have a regular traffic violation that it's not covered. You mentioned lay readers, and I think that's how a lay reader would read this. Well, again, they didn't. I mean, I think they did what they should have done. They spoke to a lawyer. Again, if you look at DUI, again, DUI in some states is not classified as a crime. It's classified as a violation, a civil violation. That's what the court was dealing with in the Harrison versus Unum case. So there is crimes and violations. There's overlap to those things, and the fact that Unum is trying to provide some broad guidance to its employees and making crystal clear that every factual scenario is different. I mean, it goes out of its way several times to do that. Again, I think there are overlapping scenarios between violations and crimes, and Unum is just trying to make sure that the claims administrators look at each factual scenario differently. The causal connection is definitely key, and there's no reason. I mean, when you're speeding 74 miles an hour around a turn on a dirt road where the tires actually leave the surface of the road, that's not just a mere traffic violation. That's a crime serious enough to directly cause a death. Let me make sure I understand. What does the final police report say? He was going 74, but it was in a 55. It's unclear what the operative speed limit is. The posted speed limit was 35, and there's a provision in Wyoming statutes that says the speed limit on a dirt road is 55. The final traffic report cited to both. So it's sort of unclear, but it doesn't matter. But this is on a curve? Yeah, it was. He was taking the 35 posted just for the curve or for the whole road. It's unclear, Your Honor. It's unclear. But the crime that you've always relied on was speeding. It wasn't reckless driving or something more serious. And so you're stuck with speeding, aren't you? That's what the crime we're looking at. Exceeding the speed limit driving too fast for the conditions is what is what the and again in the in the case. I mean, there's no reason. I mean, again, the key component is the connection between the act and the loss. I mean, OUI, for instance, you're going to have a lot of OUI situations where there is a causal piece missing. I mean, because you know, OUI or DUI, whereas the plaintiff seems to indicate that you shouldn't apply it to here, even if he was going 100 miles an hour because it's only speeding. But you should apply it to OUI because that's somehow morally more reprehensible. But again, if someone has three beers and gets rear-ended by someone, I don't think that's what the provision was supposed to apply to. But you could say, if a person's going 100 miles an hour or 74, that's reckless driving and that's what we're relying on here. Reckless driving, I think, speaks to in Wyoming, at least, it speaks to reckless disregard for personal property. And so, if it happens to be yourself and your car, again, that's a reason why it says crime. It doesn't say only serious crimes. If you just start to apply it to serious crimes, then you have no guidance for administrators. All crimes that are serious enough to cause a death, that's what it applies to. That's the clear and unambiguous meaning of it that would satisfy any standard of review. And that's what makes sense from an ERISA standpoint where predictability is the key. Otherwise, you don't know where to draw the line. UNUM draws the line, all crimes serious enough to cause a death. And that's what the district court held correctly. I see Mike. Going over a little bit. Your time's up. The clock is going up. Okay, sorry. Thank you, Your Honor. I've got a minute left. Two quick points. One is when you take Miller and you take Kimber and the cases that come after, you've got two distinct classes of plaintiffs. One that, as the Miller court recognized, would have less protections than they did before ERISA. One that has the same. That can't stand. The claims manual, here's the thing about the claims manual. When you read it and what it says, it tracks all those cases that Attorney Kelly sent to them at the very beginning that said DUI, speeding was something more, weaving in and out of traffic, avoiding arrest. Something more is a crime. But the claims manual says that no, when you've got traffic violations, it's not. The claims manual is just the same as the cases that Attorney Kelly sent to them. And had they interpreted the policy consistent both with UNUM's intent and, importantly, the context of a reasonable insured, then they would have got it right. They would have followed the claims manual. They would have followed all these other cases. And they would have done the right thing. And by not doing the right thing, they abused their discretion. Your time is expired. Oh. Oh, it's going up too. I'm sorry about that. That's all right. You both exceeded it just about the same amount. Try to be fair. Thank you very much, counsel. Both cases submitted, counsel are excused, and we'll turn to our final case of the day, 17-8092, Mestis v. Town of Evansville.